# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 CR 0978 |
| | ) | |
| MOUSA MOHAMMED ABU MARZOOK, | ) | |
| MUHAMMAD HAMID KHALIL | ) | |
| SALAH, and ABDELHALEEM | ) | |
| HASAN ABDELRAZIQ ASHQAR, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On August 19, 2004, a Grand Jury returned a multiple-count, Second Superseding Indictment (the "Indictment") against Defendant Abdelhaleem Hasan Abdelraziq Ashqar ("Ashqar" or "Defendant") and his co-defendants, Mousa Mohammed Abu Marzook ("Marzook") and Muhammad Hamid Khalil Salah ("Salah"). Currently before the Court is Ashqar's Motion to Dismiss Count I of the Second Superseding Indictment (the "Motion"). For the reasons stated below, the Court denies Ashqar's motion.

## BACKGROUND

The Indictment charges that Ashqar along with his co-defendants and certain unindicted co-conspirators violated 18 U.S.C. § 1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), which makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [18 U.S.C. §1962]." (R. 59-1, Second Superseding Indictment at ¶¶1-24CCC.) The Indictment further alleges that Defendants "did

conspire to violate [18 U.S.C. §1962(c)], that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity . . . through multiple acts indictable" under various federal and state laws. (*Id.* at ¶3.) *See also* 18 U.S.C. §1962(c) (providing that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt"). The Indictment specifically identifies acts indictable under 720 ILCS 5/8-2 and 720 ILCS 5/9-1 (first degree murder and conspiracy to commit first degree murder), 720 ILCS 5/8-1.1 (solicitation of first degree murder), and 18 U.S.C. §1956 (money laundering and attempt and conspiracy to do so), among other statutes. (R. 59-1, Second Superseding Indictment at ¶3.)

In support of this charge, the Indictment alleges the following facts. Beginning no later than about August 1988, Ashqar began working on behalf of Hamas, an enterprise having the alleged common purpose of "forcing the State and citizens of Israel to cede physical and political control over the lands comprising Israel, the West Bank, and the Gaza Strip, and the replacement of the Israeli political authority over these lands with an Islamic government, through means that included the promotion and execution of acts of terrorism." (R. 59-1, Second Superseding Indictment at ¶¶2, 24B.) From at least as early as 1989 through January 1993, Ashqar along with certain co-conspirators utilized various accounts at financial institutions throughout the United States to transfer large sums of money from various sources abroad through the United States to Israel and elsewhere. (*Id.* at ¶¶24M(i), 24M(iv) (describing these transfers by location, approximate date, and monetary amount).)

The Indictment further alleges that, in or about August 1993, Ashqar "debriefed" a co-conspirator who, along with Salah, had visited the Middle East on behalf of Hamas, (*id.* at ¶24BB), and that Ashqar facilitated Co-conspirator A's reintegration into the community and Hamas in the United States. (*Id.* at ¶24DD.) These efforts included the transfer of over $15,000 to Co-conspirator A, as well as a proposal to other Hamas members that Co-conspirator A be included in a secret meeting of Hamas members to take place in Philadelphia, Pennsylvania. (*Id.*)

The Indictment further alleges that, as part of his role as a Hamas administrator, Ashqar produced, collected, and disseminated numerous documents and information in furtherance of Hamas's goals in the United States and abroad, including goals related to the Hamas command and control structure, recruitment of new members for Hamas, progress reports of Hamas plans and activities, and control and minimization of damage to Hamas from the arrest and loss of members involved in terrorist actions. (*Id.* at ¶24EE.) In particular, in furtherance of the conspiracy, Ashqar allegedly collected and, at times, disseminated documents relating to:

(1) Hamas members' aliases, phone numbers, and addresses;

(2) the death or capture of various Hamas members;

(3) Hamas terrorist attacks;

(4) security training and directives, including counter-surveillance techniques, secrecy protocols, and interrogation issues;

(5) confessions provided by captured Hamas members;

(6) assessments and analysis on the state of Hamas in the West Bank and Gaza Strip as well as abroad;

(7) minutes or summaries of meetings between Hamas members and other organizations and groups, including the Palestinian Liberation Organization, Fatah, the Palestinian Front for the Liberation of Palestine, and the Palestinian Islamic Jihad, as well as meetings between Hamas members and foreign countries;

(8) information the Israelis obtained regarding Hamas membership and activities;

(9) Israeli indictments against various Hamas members;

(10) The movement of money for Hamas activities;

(11) The Hamas deportees who were deported to Lebanon in December 1992, including statements made by co-Defendant Marzook on the issue of the deportees;

(12) Opposition to peace attempts between the State of Israel and the Palestinians;

(13) A secret meeting of Hamas members in Philadelphia, Pennsylvania;

(14) Resistance to Israeli occupation of the West Bank and Gaza Strip and Hamas's relationship with other pro-Palestinian organizations;

(15) Policies and activities of various terrorist organizations or anti-Israeli groups; and

(16) Hamas statements distributed by the Islamic Association for Palestine.

(*Id.*)

As part of his role as a Hamas administrator and in furtherance of the RICO conspiracy, the Indictment alleges that Ashqar participated in a number of phone conversations related to Hamas activity both in the United States and abroad. (*Id.* at ¶24FF.) These phone conversations sometimes occurred in code. (*Id.*) These phone calls were in furtherance of Hamas's goals in the United States and abroad, including goals related to the Hamas command and control structure, recruitment of new members of Hamas, progress reports of Hamas plans and activities, and control and minimization of damage to Hamas from the arrest and loss of members involved in terrorist actions. (*Id.*) In particular, Ashqar allegedly participated in phone conversations related to:

(1) Hamas members' contacts with the United States government;

(2) Hamas's need for financial assistance in order to further its goals;

(3) The movement of money for Hamas;

(4) The Hamas members who were deported to Lebanon in December 1992;

(5) Management of Hamas and Hamas personnel within the Gaza Strip and West Bank, including specific conversations related to killing a Hamas member who was not obeying orders, and killing Hamas members collaborating with Israelis;

(6) Management of Hamas and Hamas members in the United States;

(7) Meetings Ashqar was to have with Co-conspirator G and Sheik Jamil Hamami in January and March 1994;

(8) A secret meeting of Hamas members in Philadelphia, Pennsylvania in October 1993;

(9) The affairs and activities of Co-conspirator A;

(10) Hamas terrorist operations and terrorists;

(11) Hamas organizational initiatives in the United States;

(12) Opposition to peace attempts between the State of Israel and Palestinians;

(13) Hamas founder Sheik Ahmed Yassin;

(14) Hamas's views on the PLO, Yasir Arafat, and anti-Israeli organizations; and

(15) The affairs and activities of co-Defendant Salah.

(*Id.*)

The Indictment further alleges that in October 1993, Ashqar met with various Hamas members in Philadelphia to discuss Hamas issues including Hamas's illegal activities inside the United States and abroad and lessons learned from the capture of Salah. (*Id.* at ¶24GG.) In March 1994, Ashqar met in Oxford, Mississippi, with two other Hamas members, including co-conspirator Sheik Jamil Hamami, to discuss Hamas issues and the transfer of money for Hamas activities overseas. (*Id.* at ¶24HH.)

The Indictment further alleges that, in February 1998, Ashqar, despite a grant of immunity, refused to testify before a federal Grand Jury sitting in New York, New York, and continued to refuse to testify into August 1998, in an effort to hide his and co-conspirators'

activities on behalf of Hamas, and to continue his activities on behalf of Hamas undeterred. (*Id.* at ¶24KK.) In June 2003, Ashqar, despite a grant of immunity and an order compelling his testimony, refused to testify before a Grand Jury sitting in Chicago, Illinois, and continued to refuse to testify into October 2003, in an effort to hide his and co-conspirators' activities on behalf of Hamas, and to continue his activities on behalf of Hamas undetected. (*Id.* at ¶24CCC, Count IV, Count V.)

## ANALYSIS

Fed. R. Crim. P. 12(b)(2) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." "When considering a motion to dismiss an indictment, a court assumes all facts in the indictment are true and must 'view all facts in the light most favorable to the government.'" *United States v. Segal*, 299 F. Supp. 2d 840, 844 (N.D. Ill. 2004) (quoting *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir.1999)). "An indictment is constitutionally sufficient if it states all of the elements of the offense charged, informs the defendant of the nature of the charges so that he can prepare a defense, and enables the defendant to assess any double jeopardy problems the charge may raise." *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992). A court must consider the indictment "as a whole to determine if it meets [these] requirements." *Id.* In addition, "arguments raised in a motion to dismiss that rely on disputed facts should be denied." *United States v. Caputo*, 288 F. Supp. 2d 912, 916 (N.D. Ill. 2003) (citing *United States v. Shriver*, 989 F.2d 898, 906 (7th Cir.1992). But "[a]n indictment, or a portion thereof, may be dismissed if it is otherwise defective or subject to a defense that may be decided solely on issues of law." *United States v. Labs of Virginia, Inc.*, 272 F. Supp. 2d 764, 768 (N.D. Ill. 2003); *see also United States*

*v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) ("[t]he propriety of granting a motion to dismiss an indictment under [Fed. R. Crim. P.] 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact. If a question of law is involved, then consideration of the motion is generally proper." (citation omitted)). With these principles in mind, the Court turns to the merits of Defendant's Motion.

I. **Defendant's First Amendment Rights to Freedom of Speech and Association**

Ashqar contends that the Indictment is "nothing short of an attempt by the government to criminalize [Ashqar's] political and social views solely because those views which he advocates are in opposition to the current Mid-East policy of the United States and this country's support of Israel." (R. 264-1; Def.'s Mem. in Supp. of Mot. to Dismiss at 10.) Ashqar further contends that, as a result, the Indictment impinges on his First Amendment rights of freedom of speech and association, even though "Count One admittedly contains numerous allegations of conduct that are not protected [under the First Amendment]." (*Id.* at 11 (contending further that the Indictment "lumps Ashqar's protected freedoms of association and speech with unprotected conduct by others and, in turn, seeks to criminalize Ashqar's First Amendment right to speech and association").) In the alternative, Ashqar argues that the Court must apply the doctrine of *strictissimi juris* to address the alleged constitutional infirmities in the Indictment.

Ashqar bases his primary argument on the principle that the First Amendment prohibits criminal liability based on an individual's mere association with a group. *See, e.g., NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918-19, 102 S. Ct. 3409, 3429, 73 L. Ed. 2d 1215, 1240 (1982); *Scales v. United States*, 367 U.S. 203, 224-25, 81 S. Ct. 1469, 1484, 6 L. Ed. 2d 782, 799

(1961) (finding unconstitutional a statute making it unlawful to be a knowing member in any organization that advocated the violent overthrow of the United States because "[i]n our jurisprudence guilt is personal" and "[m]embership without more, in an organization engaged in illegal advocacy is insufficient to satisfy personal guilt"). This principle recognizes that an individual cannot be punished for mere membership in an organization, even if that organization has legal as well as illegal goals. *See Scales*, 367 U.S. at 229, 81 S. Ct. at 1486, 6 L. Ed. 2d at 802 (a "blanket prohibition of association with a group having both legal and illegal aims . . . [would pose] a real danger that legitimate political expression or association would be impaired"). Thus, any statute prohibiting *mere association* with such an organization must require a showing that the defendant specifically intended to further the organization's unlawful goals. *See Boim v. Quranic Literacy Found. for Relief and Devel.*, 291 F.3d 1000, 1022 (7th Cir. 2002) (the Seventh Circuit "[has] no quarrel with that general proposition or with its corollary, that in order to impose liability on an individual for association with a group, it is necessary to establish that the group possessed unlawful goals and that the individual held a specific intent to further those illegal aims"); *see also United States v. Hammoud*, 381 F.3d 316, 328-29 (4th Cir. 2004) ("it is a violation of the First Amendment to punish an individual *for mere membership* in an organization that has legal and illegal goals" (emphasis added)) (18 U.S.C. §2339B context).

As the Seventh Circuit has stated, *Claiborne Hardware* and similar cases apply only "to situations where the government seeks to impose liability on the basis of association alone, *i.e.*, on the basis of membership alone or because a person espouses the views of an organization that engages in illegal activities." *Boim*, 291 F.3d at 1026. That is not the case here.

The allegations in the Indictment reflect that Ashqar is not going to be tried under 18 U.S.C. §1962(d) for his mere association or membership in Hamas, or for expressing views in favor of Hamas. *See, e.g., id.* (holding that "[c]onduct giving rise to liability under [18 U.S.C. §2339B], of course, does not implicate associational or speech rights. Under section 2339B . . . HLF and QLI may, with impunity, become members of Hamas, praise Hamas for its use of terrorism, and vigorously advocate the goals and philosophies of Hamas. Section 2339B prohibits only the provision of material support . . . to a terrorist organization. There is no constitutional right to provide weapons and explosives to terrorists, nor is there any right to provide the resources with which the terrorists can purchase weapons and explosives." (citation omitted)); *see also United States v. Glecier*, 923 F.2d 496, 500 (7th Cir. 1991) ("Section 1962(c), the familiar 'substantive' RICO provision, criminalizes the participation in the affairs of an enterprise affecting interstate commerce through a pattern of racketeering activity. Section 1962(d), like all conspiracy provisions, has as its target the act of agreement – here, the agreement to engage in activity that implicates section 1962(c)"). Rather, the Indictment charges Ashqar with conduct that goes beyond mere association or advocacy. *See, e.g., id.* at 1027 (holding that a civil suit brought under 18 U.S.C. §2333 did not violate the First Amendment because that statute does "not punish membership in a designated terrorist organization, or penalize the expression of views held by these organizations. Rather, such a suit is aimed at prohibiting the funding of violent acts that these organizations wish to carry out."); *see also Claiborne Hardware*, 458 U.S. at 916, 102 S. Ct. 3409) ("Certainly violence has no sanctuary in the First Amendment, and the use of weapons, gunpowder, and gasoline may not constitutionally masquerade under the guise of 'advocacy.'" (quoting *Samuels v. Mackell*, 401 U.S. 66, 75, 91 S.

Ct. 764, 769, 27 L. Ed. 2d 688 (1971) (Douglas, J., concurring)). For instance, the Indictment alleges that, in furtherance of the conspiracy, Ashqar, among other things: (1) acted as an archivist that collected and distributed information and documents in furtherance of Hamas's unlawful goals (R. 59-1; Second Superseding Indictment at ¶24EE); (2) participated in phone conversations related to Hamas's terrorist operations (*id.* at ¶24FF(x)); and (3) participated in phone conversations related to killing a Hamas member who was not obeying orders, and killing Hamas members collaborating with Israelis (*id.* at ¶24FF(v)). Similar allegations abound. Thus, contrary to Defendant's contention, the Court, at this juncture, cannot dismiss the Indictment on First Amendment grounds. *See* Fed. R. Crim. P. 12(b)(2); *United States v. Segal*, 299 F. Supp. 2d at 844. At trial, however, Ashqar is entitled to put forward evidence that the conduct alleged in the Indictment amounts only to mere membership in Hamas or political advocacy in support of Hamas.

Ashqar argues in the alternative that the doctrine of *strictissimi juris* applies in this case. "This doctrine literally translated means 'of the strictest right.'" *United States v. Cerilli*, 603 F.2d 415, 421 (3$^d$ Cir. 1979). "The requirement of judging intent *strictissimi juris* grew out of penalties based on membership as such . . ." *United States v. Dellinger*, 472 F.2d 340, 392 (7th Cir. 1972) (citing *Scales*, 367 U.S. at 230, 81 S. Ct. at 1487, 6 L. Ed. 2d at 802); *Noto v. United States*, 367 U.S. 290, 299-300, 81 S. Ct. 1517, 1522, 6 L. Ed. 2d 836 (1961) (violation of the membership clause of the Smith Act "must be judged *strictissimi juris*, for otherwise there is a danger that one in sympathy with the legitimate aims of such an organization, but not specifically intending to accomplish them by resort to violence, might be punished for his adherence to lawful and constitutionally protected purposes, because of other and unprotected

purposes which he does not necessarily share"); *Scales*, 367 U.S. at 232, 81 S. Ct. at 1487-88 ("Smith Act offenses involving as they do subtler elements than are present in most other crimes, call for strict standards in assessing the adequacy of the proof needed to make out a case of *illegal advocacy*" (emphasis added)). *See also Cerilli*, 603 F.2d at 421 n.8 (noting that the Smith Act made illegal "[w]hoever organizes or helps or attempts to organize any society, group, or assembly of persons who teach, advocate, or encourage the overthrow or destruction of any such government by force or violence; or becomes or is a member of, or affiliates with, any such society, group, or assembly of persons, knowing the purposes thereof [could be fined or imprisoned]"); *cf.* 18 U.S.C. §1962(d) (proscribing conspiracy to engage in a pattern of racketeering activity, not mere membership or advocacy); *Glecier*, 923 F.2d at 500. "Courts use *strictissimi juris* only under very special circumstances. . ." *United States v. Montour*, 944 F.2d 1019, 1024 (2$^d$ Cir. 1991)

Indeed, as the Seventh Circuit explains, *strictissimi juris* applies "[w]hen the group activity out of which the alleged offense develops can be described as a bifarious undertaking, involving both legal and illegal purposes and conduct, and is within the shadow of the first amendment:"

> This is necessary to avoid punishing one who participates in such an undertaking and is in sympathy with its legitimate aims, but does not intend to accomplish them by unlawful means. Specially meticulous inquiry into the sufficiency of proof is justified and required because of the real possibility in considering group activity, characteristic of political or social movements, of an unfair imputation of the intent or acts of some participants to all others.

*Dellinger*, 472 F.2d at 392;[1] *see also Montour*, 944 F.2d at 1024 (*strictissimi juris* applies "[w]hen the ultimate objective of a group, of which the defendant is a member, is legal, but the means chosen to accomplish that end involve both legal and illegal activities, a court will apply *strictissimi juris* to ensure that the defendant was personally involved with the illegal aspects of the group activity."); *United States v. Markiewicz*, 978 F.2d 786, 813 (2ᵈ Cir. 1992) (same). In such situations, *strictissimi juris* requires a court to determine if "there is sufficient direct or circumstantial evidence of the defendant's own advocacy of and participation in the illegal goals of the conspiracy and [the court] may not impute the illegal intent of alleged co-conspirators to the actions of the defendant." *Montour*, 944 F.2d at 1024 (citations omitted).

Here, the facts alleged in the Indictment do not fall "within the shadow of the first amendment." *Dellinger*, 472 F.2d at 392. Foremost, RICO does not criminalize mere membership or association with Hamas or mere advocacy on Hamas's behalf. *See Glecier*, 923 F.2d at 500. In addition, the RICO count in the Indictment charges that Ashqar affirmatively engaged in a racketeering conspiracy aimed at violating a number of federal and state criminal statutes – conduct that is not protected under the First Amendment. (R. 59-1, Second Superseding Indictment at ¶¶1-24CCC.) Thus, at this juncture, the Court cannot conclude that the doctrine of *strictissimi juris* applies to this case. *See United States v. Rodriguez*, 803 F.2d 318, 322 (7ᵗʰ Cir. 1986) (finding no error where jury instructions did not state that *strictissimi juris* standard governed defendant's conduct because "[i]n urging the application of a special standard of proof, Rodriguez ignores the charges and evidence against him. The evidence shows

---

[1] As the Seventh Circuit described in *Dellinger*, "the counts against the five defendants here charged with inciting, organizing, promoting and encouraging a riot under this statute, were based wholly on the making of speeches." 472 F.2d at 359.

that Rodriguez knowingly and intentionally became a member of the conspiracy. The defendants were charged with agreeing to use force, not 'advocating' force which renders the Smith Act case relied upon by the defendant irrelevant."); *see also Montour*, 944 F.2d at 1024 ("it is clear that *strictissimi juris* does not apply to the instant matter. Here, both the alleged ends of the group (forcibly impeding the service of federal search warrants), and the alleged means chosen to achieve that end (setting up roadblocks on the reservation) were illegal" (parentheses original)); *Cerilli*, 603 F.2d at 422 (finding that "[t]he coercive solicitation of appellants here is not the type of 'bifarious undertaking . . . within the shadow of the first amendment' that warrants the application of the *Strictissimi juris* doctrine. . . . We need not seriously fear that convictions in cases such as this will chill the legitimate exercise of first amendment rights. Appellants have not been indicted for membership in a political party nor have they been indicted for their personal political preferences. They have been indicted for extortion. We are satisfied that the traditional standards of proof and of judicial review are fully adequate to protect appellants' rights without application of the doctrine of *Strictissimi juris*.").

## II. Vagueness and Personal Guilt

Ashqar also contends that Count I of the Indictment is unconstitutionally vague in violation of Ashqar's right to Due Process under the Fifth Amendment. Without saying as much, Ashqar also presents the distinct argument that Count I is unconstitutional under the Fifth Amendment's requirement of personal guilt. Neither argument has merit.

In its previous Memorandum and Order addressing co-Defendant Salah's motion to dismiss Count II of the Second Superseding Indictment (the "Salah Opinion"), the Court provided an extensive analysis of the constitutional doctrine of vagueness. Briefly restated here,

"[t]he void for vagueness doctrine rests on the basic principle of due process that a law is unconstitutional 'if its prohibitions are not clearly defined.'" *Karlin v. Foust*, 188 F.3d 446, 458 (7th Cir. 1999) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)). The Supreme Court has noted that vague laws "offend several important values." *Grayned*, 408 U.S. at 108-09, 92 S. Ct. at 2298-99, 33 L. Ed. 2d at 227-28. First, vague laws fail to give "the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly [and] . . . may trap the innocent by not providing fair warning." *Id.* Second, vague laws fail to provide explicit standards and thus "impermissibly delegate[] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* Third, "where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms." *Id.* "Although the [vagueness] doctrine focuses both on actual notice to citizens and arbitrary enforcement, [the Supreme Court has] recognized recently that the more important aspect . . . 'is not actual notice, but . . . the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Kolender v. Lawson*, 461 U.S. 352, 357-58, 103 S. Ct. 1855, 1858, 75 L. Ed. 2d 903, 909 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974)).

A party may raise a vagueness challenge by arguing either that a statute is vague as applied to the facts at hand, or that a statute is void on its face. As to the first type of challenge, where a party "receive[s] fair warning of the criminality of his own conduct from the statute in question" he may not attack the statute on grounds that "the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit." *Parker*

*v. Levy*, 417 U.S. 733, 756, 94 S. Ct. 2547, 2561-62, 41 L. Ed. 2d 439, 457-58 (1974). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Id.*

As to facial vagueness challenges, a court, generally speaking, "must uphold a facial challenge 'only if the enactment is impermissibly vague in all of its applications.'" *Fuller v. Decatur Public School Bd. of Educ. School Dist. 61,* 251 F.3d 662, 667 (7th Cir. 2001) (quoting *Flipside*, 455 U.S. at 494-95, 102 S. Ct. at 1191, 71 L. Ed. 2d at 369). But "[w]hen a law threatens to inhibit the exercise of constitutionally protected rights [such as those protected under the First Amendment] . . . the Constitution demands that courts apply a more stringent vagueness test." *Karlin*, 188 F.3d at 458 ("The most important factor affecting the degree of clarity necessary to satisfy the Constitution is whether constitutional rights are at stake."). In such a scenario, a statute is void for vagueness if it reaches a "'substantial amount of constitutionally protected conduct.'" *Fuller*, 251 F.3d at 667 (quoting *Flipside*, 455 U.S. at 497, 102 S. Ct. at 1191, 71 L. Ed. 2d at 369).

Here, although so styled, Ashqar does not actually raise a "vagueness" challenge – which challenges the validity of a statute and focuses on whether the criminal statute at issue provides sufficient notice of what conduct it criminalizes. Indeed, Ashqar makes no showing whatever that RICO is "unconstitutionally vague in at least a substantial number of the cases to which it could apply." *Rodgers*, 755 F.2d at 544. Likewise, Ashqar fails to make any argument that RICO is vague as applied to the facts here (which, given the nature of the allegations in the

Indictment, would fail in any event). Ashqar, thus, has not demonstrated that the Court should dismiss Count I for vagueness.[2]

Instead, Ashqar argues that dismissal is appropriate because the Indictment fails to satisfy the Fifth Amendment requirement of personal guilt. *See Scales*, 367 U.S. at 224-225, 81 S. Ct. at 1484 ("In our jurisprudence guilt is personal, and when the imposition of punishment on a status or on conduct can only be justified by reference to the relationship of that status or conduct to other concededly criminal activity (here advocacy of violent overthrow), that relationship must be sufficiently substantial to satisfy the concept of personal guilt in order to withstand attack under the Due Process Clause of the Fifth Amendment. Membership, without more, in an organization engaged in illegal advocacy, it is now said, has not heretofore been recognized by this Court to be such a relationship." (parentheses original)). On this front, Ashqar again relies heavily on the *Scales* case. As discussed above, however, the Seventh Circuit already has noted that the *Scales* rationale applies only when the criminal statute at issue criminalizes mere membership in an association with illegal aims. *See Boim*, 291 F.3d at 1026. Here, the Indictment does not allege and RICO, more generally, does not criminalize mere

---

[2] In addition, the Seventh Circuit repeatedly has held that RICO is not unconstitutionally vague. *See United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991) (finding RICO not unconstitutionally vague as applied defendants "[p]rovided the statutes criminalizing the predicate acts are not unconstitutionally vague – and no one argues they are – the defendants are on adequate notice that they are committing crimes, and the fact that they may not be aware of the extent of their criminality and consequent exposure to punishment is a detail (the original conception of RICO as a sentence-enhancement provision is pertinent here)" (parentheses original)); *United States v. Korando*, 29 F.3d 1114, 1119 (7th Cir. 1994) (rejecting argument that "RICO is unconstitutional in that it does not define the criminal offense with sufficient clarity such that ordinary people understand what is allowed and what is forbidden"); *United States v. Sanders*, 962 F.2d 660, 678 (7th Cir. 1992) (same); *Glecier*, 923 F.2d at 497-98 n.1.

membership in Hamas. *See Glecier*, 923 F.2d at 500. Rather the RICO charge reaches conduct that goes beyond membership – conduct that is aimed at furthering the illegal aims of Hamas. (R. 59-1, Second Superseding Indictment at ¶¶1-24CCC.) As a result, dismissal on this basis is not warranted.[3]

Ashqar also appears to contend that dismissal is proper because it could be that Ashqar did not in fact engage in the criminal acts alleged in the Indictment, but only in conduct protected by the Constitution. (*See, e.g.,* R. 264-1; Def.'s Mem. in Supp. of Mot. to Dismiss at 17 (arguing that the "'forms of aid' [that Ashqar provided] could amount to nothing more than Ashqar collecting contacts of members or supporters of Hamas humanitarian and political arms, of the state of Hamas social welfare activities in the West Bank and Gaza Strip").) That is a proper defense, but it is a fact-sensitive defense that Defendant can present at trial. It not grounds for dismissal. *See* Fed. R. Crim. P. 12(b)(2); *see also Caputo*, 288 F. Supp. 2d at 916 (motions to dismiss cannot resolve factual questions raised in an indictment); *Flores*, 404 F.3d at 324 (same). Accordingly, Defendant's motion to dismiss is denied.

---

[3] Ashqar also relies on *United States v. Al-Arian*, 308 F. Supp. 2d 1322, 1333 (M.D. Fla. 2004). As the Court explained in the Salah Opinion, the *Al-Arian* court considered the question of scienter under the material support statute, 18 U.S.C. §2339B (the same statute under which Ashqar's co-Defendant Salah has been charged). The Court disagreed with *Al-Arian* to the extent it required a level a scienter that found no basis in the statutory language. Instead, the Court held that to comport with Supreme Court jurisprudence on the issue of scienter, the material support statute requires proof that a defendant provided material support knowing either that the recipient was a designated FTO or had engaged in terrorist activity. *See United States v. Marzook*, 383 F. Supp. 2d 1056, 1070 (N.D. Ill. 2005). Regarding Count I, however, Ashqar does not contend that RICO presents a similar issue of statutory construction, or that RICO's statutory language raises personal guilt or scienter issues. Thus, Ashqar's reliance on *Al-Arian* is unavailing.

## CONCLUSION

For the above reasons, the Court denies Defendant Ashqar's motion to dismiss Count I of the Second Superseding Indictment.

Dated:  November 17, 2005                          ENTERED

_____
AMY J. STUEVE
United States District Judge