**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 CR 0978 |
| | ) | |
| MOUSA MOHAMMED ABU MARZOOK, | ) | |
| MUHAMMAD HAMID KHALIL | ) | |
| SALAH, and ABDELHALEEM | ) | |
| HASAN ABDELRAZIQ ASHQAR, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On August 19, 2004, a Grand Jury returned a multiple-count, second superseding indictment (the "Indictment") against Defendant Muhammad Hamid Khalil Salah ("Defendant" or "Salah") and his co-defendants. Defendant Salah has filed a motion to suppress statements he allegedly made to Israeli authorities. Salah argues that he did not voluntarily make any statements that the government seeks to admit at trial. The United States has filed a motion to conduct certain portions of the suppression hearing in a closed courtroom, pursuant to the Classified Information Procedures Act. The United States has further asked the Court to approve certain procedures to ensure the safety of several witnesses, including allowing these witnesses to wear light disguise while they testify and to use non-public entrances to the courthouse and the courtroom. After reviewing the parties' submissions, including the *ex parte* and *in camera* affidavits, the Court grants the government's motion in part.

**BACKGROUND**

## I.      The Indictment

The Indictment charges Defendant Salah with conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. § 1962(d) (Count I); knowingly providing and attempting to provide material support and resources to a Foreign Terrorist Organization, namely, Hamas, in violation of 18 U.S.C. § 2339B (Count II); and obstructing justice, in violation of 18 U.S.C. § 1503 (Count III). Each charge is premised upon and related to Salah's alleged support of the Hamas terrorist organization, both prior to and after the United States designated Hamas as a Specially Designated Terrorist Organization and a Foreign Terrorist Organization. The Indictment alleges that Hamas has called for violent terrorist attacks, and engaged in numerous terrorist attacks aimed at Israeli military personnel, police officers, and civilians. It alleges that Defendant Salah has provided material support to Hamas, including recruiting and training new Hamas leaders and disbursing money to support Hamas activities.

## II.      Defendant's Arrest in Israel

On approximately January 25, 1993, Defendant Salah was arrested in Israel. From this point through approximately March 1993, Salah allegedly made various statements – both orally and in writing – to Israeli authorities while he remained in custody. He allegedly made such statements to agents of Israel's General Security Service ("GSS") – also known as the Israel Security Agency ("ISA") – the Israeli National Police, and others working for these Israeli authorities. The government seeks to admit these statements during trial.

Defendant Salah has moved to suppress any written and oral statements that he allegedly

made to agents of the Israeli government, including the Israeli police, interrogators of the GSS/ISA, and others working with these authorities. In support of his motion, Salah has submitted a sworn affidavit detailing the treatment he claims he received at the hands of his interrogators. Salah argues that he did not voluntarily give any of these statements. He contends that he involuntarily made such statements because Israeli authorities coerced and tortured him into making them. Given that Defendant Salah's affidavit makes a preliminary showing that a significant, disputed factual issue exists, the Court will hold an evidentiary hearing. *See United States v. Wilson*, 169 F.3d 418, 426 (7th Cir. 1999).

## III. The Hearing

The suppression hearing will commence with opening statements on March 3, 2006, and testimony on March 6, 2006. At the hearing, the government intends to call approximately six or seven witnesses to testify. Two of these witnesses will be agents of the ISA. The ISA is an intelligence agency for the State of Israel that provides for Israel's internal security. The government has moved the Court to close the hearing to the public when these ISA agents testify. It argues that a closed hearing is mandated by the Classified Information Procedures Act, and warranted to protect the safety of the ISA agents and the sanctity of the ISA's intelligence gathering methods. In connection with its motion, the government has submitted two affidavits, including the classified affidavit of the Federal Bureau of Investigation's ("FBI") Assistant Director for Counterintelligence David W. Szady. (R. 367-1, Ex. B.) Additionally, in response to the Court's January 17, 2006 order, the government submitted an additional affidavit providing further details of the anticipated testimony of the ISA agents. (R. 402-1.)

**IV.    Motions to Intervene**

The Chicago Tribune Company has moved to intervene in order to challenge the government's motion to close a portion of the suppression hearing to the public.  Similarly, the Center for Constitutional Rights[1] ("CCR") has moved to intervene for the sole purpose of asserting a First Amendment right of public access to Defendant's suppression hearing.  Both the Chicago Tribune and the CCR argue that the allegations at issue in the suppression hearing merit significant public attention, especially Defendant's allegations that Israeli authorities tortured him into making certain statements.

The Court grants both the Chicago Tribune's motion to intervene and the CCR's motion to intervene for the limited purpose of challenging the government's motion to close the ISA agents' testimony to the public.  *See In re Associated Press*, 162 F.3d 503, 506-07 (7th Cir. 1998).  After considering their respective submissions, for the reasons discussed in detail below, the Court denies both the Chicago Tribune's and the CCR's request to have the ISA agents testify in an open hearing.  The Court grants the Chicago Tribune's request to have timely public access to the transcripts of non-classified portions of the testimony as detailed below.

## ANALYSIS

At the suppression hearing, the Court will determine whether Defendant Salah's alleged statements are admissible at trial.  The government has moved to have the testimony of the ISA agents at the hearing conducted *in camera* for the Court to resolve questions regarding the use and admissibility of Salah's statements.  The government argues, and has provided supporting evidence, that the substance of the ISA agents' testimony is classified and thus cannot be

---

[1] This motion is brought on behalf of 22 organizations in Chicago and 7 individuals.

disclosed to the public. The government does not seek to have Defendant Salah and his attorneys excluded from this testimony because the Israeli authorities have agreed to waive the classification designation as to the majority of this information as to Salah and his counsel, as well as to Co-Defendant Ashqar's counsel. Instead, the government seeks to have these agents testify outside the presence of the public because Israel has not waived the classification designation generally. Thus, the primary issue presented to the Court is whether the public can have access to the testimonial information deemed classified at the suppression hearing.[2]

## I.    The Classified Information Procedures Act

The Classified Information Procedures Act ("CIPA"), 18. U.S.C. App. 3, "is essentially a procedural tool" for a court to address the relevance of classified information before it may be introduced. *See United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005), citing *United States v. Wilson*, 901 F.2d 378, 379 (4th Cir. 1990). CIPA's "fundamental purpose is to 'protect [ ] and restrict[ ] the discovery of classified information in a way that does not impair the defendant's right to a fair trial.'" *Id.,* quoting *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002). CIPA is designed "to protect classified information from unnecessary disclosure at any stage of a

---

[2] Defendant Salah spends considerable time arguing that the Court should preclude the ISA agents from testifying in the first instance because the government has not produced all relevant documents from Israel that Defendant has sought during discovery. The issue of discovery and requested documents solely in the possession of Israel has been addressed at multiple hearings in this case. (*See, e.g.,* Hr'g Tr., Aug. 4, 2004; Hr'g Tr., Sept. 14, 2005; Hr'g Tr., Dec. 22, 2005; Hr'g Tr., Jan. 17, 2006.) The Court has ordered the government to obtain certain categories of documents from Israel, to the extent such documents exist. Moreover, the Court has informed Defendant that it will determine what impact, if any, the absence of certain documentation has – including potential adverse inferences against the government – when it rules on the suppression issues. In order to make an informed decision and consider the totality of the circumstances, the Court must assess Israel's refusal to produce certain documents in the context of the witnesses' testimony during the hearing.

criminal trial." *O'Hara*, 301 F.3d at 568. It provides "pretrial procedures that will permit the trial judge to rule on questions of admissibility involving classified information before introduction of the evidence in open court." *In re Washington Post Co.*, 807 F.2d 383, 393 (4th Cir. 1986) (citation and quotation omitted).

CIPA defines classified information as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security..." 18. U.S.C. App. 3, § 1(a). "National security," under CIPA, "means the national defense and foreign relations of the United States." *Id.,* § 1(b).

The government brings this motion pursuant to Sections 4 and 6 of CIPA. Section 4 provides:

> The court may permit the United States to make a written request for [an authorization to delete specified items in discoverable documents] in the form of a written statement to be inspected by the court alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

18 U.S.C. App. 3, § 4 (1994). Courts have held that this applies to testimony, as well as documents. *See, e.g., United States v. Lee*, 90 F.Supp.2d 1324, 1326 n.1 (D. N.M. 2000); *United States v. North*, 708 F. Supp. 399, 399-400 (D.D.C. 1988).

Section 6 of CIPA sets forth the "procedure for cases involving classified information." It provides that "the United States may request the court to conduct a hearing to make all determinations concerning the use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." 18. U.S.C. App. 3, § 6. Such a hearing "*shall be held in camera* if the Attorney General certifies to the court ... that a public

proceeding may result in the disclosure of classified information." *Id.*, § 6(a) (emphasis added).

## A.        The Substance of the Testimony[3]

The ISA is a domestic intelligence agency for the State of Israel.  (R. 367-1, Ex. A.)  By law, the ISA provides for the internal security of Israel.  *Id.*  Israel is in a state of high risk given the terrorist operations working against Israel.  (*Id.*)  Israel maintains the secrecy of the true identities of the ISA agents, as well as identifying characteristics.  (*Id.*, ¶¶ 17-20.)  Given this secrecy and the ISA's safety concerns for its agents, (*id.*), Israel has never before permitted ISA agents to give live testimony in the United States.  (*Id.* ¶¶ 5-6.)  Although the Court cannot publicly disclose the substance of these agents' testimony in this case, generally speaking, these witnesses will testify regarding topics that are themselves classified, including the agents' work, work-related activities, procedures, interrogation techniques, investigative methods, and other counterintelligence and securities activities of the ISA.  Defendant does not contradict the anticipated substance of the ISA agents' testimony.  Based on the *in camera* submissions of the government, (*id.*, Exs. A, B; R. 402-1), the Court finds that Israel has classified the substance of the testimony of these agents, as well as their true identities.  As set forth below, the United States, in turn, treats this information as classified for purposes of CIPA.

## B.        The Anticipated Testimony Is Classified by Executive Order

Pursuant to Executive Order 12958, issued on April 17, 1995, as further amended by Executive Order 13292, issued on March 25, 2003, "information provided to the United States Government by a foreign government ... with the expectation that the information, the source of

---

[3] The Court is precluded from providing details of the anticipated testimony given that it is covered by CIPA.  (*See* R. 367-1, Exs. A, B; R. 402-1).

the information, or both, are to be held in confidence" or "information produced by the United States pursuant to or as a result of a joint arrangement with a foreign government ... requiring that the information, the arrangement, or both, are to be held in confidence" constitutes "foreign government information." Exec. Order No. 12958, 60 Fed. Reg. 19825 (Apr. 17, 1995), § 1.1(d). Moreover, "the unauthorized disclosure of foreign government information is presumed to cause damage to the national security." *Id.*, § 1.1(c).

It is undisputed that Israel provided the substance of the testimony of the ISA agents to the United States with the expectation that it would be held in confidence. (R. 367-1, Ex. A.) Given that Israel considers the true identities of the ISA agents and the substance of their testimony classified, American authorities have certified it as classified. (*Id.*, Exs. A, B ¶ 4.) Indeed, the government's submissions leave no doubt that the government has met its burden of showing that the testimony of the ISA agents will be classified. Furthermore, Assistant Attorney General Alice Fischer[4] has certified pursuant to Section 6(a) of CIPA that a public proceeding may result in the disclosure of classified information, and has requested an *in camera* proceeding. (R. 398-2.) Accordingly, the Court grants the government's request to close the hearing to the public when these agents testify because the Court finds that the agents' anticipated testimony falls within CIPA's scope.[5] Defendant Salah and his counsel, as well as

---

[4] Pursuant to Section 14 of CIPA, the Attorney General has designated the Assistant Attorney General, Criminal Division, to exercise or perform the functions and duties conferred upon the Attorney General and the Deputy Attorney General by the Act, including the authority to issue this certification. (R. 398-2, ¶ 2.)

[5] Because the CIPA hearing will overlap with the suppression hearing, *see infra* at Section IA for an analysis of the First and Sixth Amendment rights at issue.

counsel for Co-Defendant Ashqar, may be present during this time.[6]  The Court will only permit

those with the appropriate security clearance to remain in the courtroom during this testimony.

### 1. Neither Israel Nor the United States Has De-Classified the Anticipated Testimony

Defendant Salah argues that the information at issue in this case already exists in the

public record and thus closing the hearing is unnecessary.  He asserts that "[s]ince his arrest in

1993, this case has been the subject of worldwide attention and interest.  It has been written

about and debated in innumerable books and articles."  (R. 401-1, Def. Mem. in Resp., p. 8.)

Specifically, Salah refers to:  (1) his own statements that the government turned over to him

pursuant to Federal Rule of Criminal Procedure 16; (2) his handwritten statements that the

government submitted to a court in the Southern District of New York in support of the

extradition of Co-Defendant Marzook, and that the plaintiff in *Boim v. Quranic Institute*, No. 00

C 2905 (N.D. Ill.), produced to Defendant Salah; (3) a 15 page affidavit from ISA agent "Nadav"

submitted in connection with both Marzook's extradition proceeding and the *Boim* case; and (4)

several articles published by reporters.[7]  Salah has not argued or proven that the substance of the

ISA agents' testimony is the same as the contents of these documents.  Further, even if certain

testimony is in the public record in some unofficial form, that the United States or Israeli

---

[6] To the extent that Israel refuses to waive the classification privilege regarding certain areas of the ISA testimony, the Court may conduct a hearing *ex parte, in camera* to determine whether disclosure is appropriate and, if so, in what form.  *See generally Dumeisi*, 424 F.3d at 578.  Whether such information is appropriately withheld from Defendant Salah and his counsel will be determined during the hearing and in the context of the specific testimony.

[7] Other than the cover page of the Israeli Ministry of Justice's Request for the Extradition of Mousa Mohammad Abu Marzook, Defendant does not provide the court with any of these materials.

government considers that information classified may warrant protection under CIPA in its own right. *Cf. United States v. Squillacote*, 221 F.3d 542, 578 (4th Cir. 2000) ("there is a special significance to our government's own official estimates of its strengths and weaknesses, or those of a potential enemy. When those estimates are included in an official document closely held by the government, those estimates carry with them the government's implicit stamp of correctness and accuracy. That our government believes the estimates to be correct in and of itself is a fact that would be highly valuable to other countries. While general, unofficial information about the same issues may be available in public sources, that information is merely speculative, and is no substitute for the government's official estimates.").

Significantly, Salah has not presented any evidence that the State of Israel or the United States government disclosed the substance of the anticipated classified *testimony* of the ISA agents. Because Israel has not waived its classification designation, the Court rejects Defendant's argument. *See United States v. Moussaoui*, 65 Fed. Appx. 881, 887 (4th Cir. 2003) (rejecting argument that sealing is not required because "much of the [classified] information contained in the pleadings has been reported publicly" where no official disclosure of that information); *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975) ("The District Judge properly held that classified information obtained by the CIA or the State Department was not in the public domain unless there had been official disclosure of it."); *cf. Nuclear Control Inst. v. United States Nuclear Regulatory Comm'n*, 563 F. Supp. 768, 771 (D.D.C. 1983) ("the unauthorized publication of a classified document does not require either declassification or disclosure of the document under the Freedom of Information Act. This is because confirmation or denial that an unauthorized publication is authentic can cause harm beyond that caused

through the unauthorized publication itself." (citation omitted)).  Furthermore, even if Israel had released some of these *documents* as Salah contends, it could still deem the agents' *testimony* independently classified.  *See Stein v. Dep't of Justice & Fed. Bureau of Investigation*, 662 F.2d 1245, 1259 (7th Cir. 1981) ("By exercising its discretion to make public some classified documents, it does not waive any right it has to withhold other properly classified documents of a similar nature").

### 2.    Classified Designation

Defendant also challenges the designation of the agents' testimony as "classified" based on Section 1.8 of  Executive Order 12958.  Section 1.8 provides that "[i]n no case shall information be classified in order to: ... (2) prevent embarrassment to a person, organization, or agency."  Exec. Order No. 12958, 60 Fed. Reg. 19825, § 1.8(2).[8]  Defendant argues, without any supporting evidence, that Israel has improperly designated the testimony at issue classified in order to prevent embarrassment and "to conceal Israel's use of harsh and illegal interrogation methods which violate international law as well as the law of Israel and the United States."  (R. 401-1, Def. Mem. in Resp., p. 13.)  Defendant therefore asks the Court to deem the testimony not classified.

At lease one Circuit has held that a court cannot question the Executive's designation of material as classified.  *See, e.g., United States v. Smith,* 750 F.2d 1215, 1217 (4th Cir. 1984) ("[T]he government ... may determine what information is classified.  A defendant cannot challenge this classification.  A court cannot question it.").  Although the Seventh Circuit has not

---

[8] Defendant orally requested relief under this provision of Exec. Order No. 12958.  (*See* R. 406-1, Hr'g Tr., Jan. 17, 2006 at p. 31.)  The same limitation is set forth in Section 1.7 of Exec. Order No. 13292.  *See* 68 Fed. Reg. 15315.

addressed this precise issue in the context of CIPA, it has provided some guidance in the context

of the Freedom of Information Act ("FOIA") where it has made clear that classification

"decisions rest with the executive branch." *Stein*, 662 F.2d at 1259. In *Stein*, the Seventh Circuit

confronted whether the FBI had properly withheld certain documents under the classified

documents exception to FOIA (codified at 5 U.S.C. § 552(b)(1)).[9] In this context, the Seventh

Circuit addressed a court's *in camera* review of classified documents under the FOIA where the

statute – in contrast to the CIPA statute – specifically provides for de novo review of classified

documents. *Stein*, 662 F.2d at 1254. The *Stein* court noted that:

> It is a matter of conjecture whether the court performs any real judicial function when it
> reviews classified documents in camera. Without the illumination provided by
> adversarial challenge and with no expertness in the field of national security, the court
> has no basis on which to test the accuracy of the government's claims. The court is
> limited to determining that the documents are the kinds of documents described in the
> government's affidavit, that they have been classified in fact, and that there is a logical
> nexus between the information at issue and the claimed exemption. The court is in no
> position to second-guess either the agency's determination of the need for classification
> or the agency's prediction of harm should release be permitted. Even in those instances
> where the court might have its own view of the soundness of the original policy decision,
> ... it must defer to the agency's evaluation of the need to maintain the secrecy of the
> methods used to carry out such projects.
>
> This does not mean, however, that such review does not further the purposes of the Act.
> Clearly, the prospect of having to justify its classification decisions before a neutral
> arbiter causes a more thorough and objective presubmission review by the agency than
> would otherwise be the case.

*Id. See also Braslavsky v. Fed. Bureau of Investigation*, 57 F.3d 1073, 1995 WL 341618, (7th

Cir. 1995) ("As to the intelligence material, unchallenged declarations of government officers

---

[9] That provision exempted from disclosure under FOIA "matters that are (1)(A)
specifically authorized under criteria established by an Executive order to be kept secret in the
interest of national defense or foreign policy and (B) are in fact properly classified pursuant to
such Executive order." 5 U.S.C. § 552(b)(1).

that the undisclosed information satisfies the procedural and substantive requirements of Executive Order 12356 and could be expected to cause damage to national security justifies withholding the information").

Defendant cites *Webster v. Doe*, 486 U.S. 592 (1988), *Dubbs v. Central Intelligence Agency*, 866 F.2d 1114, 1120-21 (9th Cir. 1989), and *Powell v. United States Dep't of Justice*, 584 F. Supp. 1508 (N.D. Cal. 1984), to support his argument that the Court can review the validity of the government's classification designations. First, none of these cases involved the review of classification designations in the context of CIPA. *Webster* and *Dubbs* both held that courts can review colorable constitutional claims in the context of the Central Intelligence Agency's ("CIA") discharge of employees, but neither opined on a court's ability to review classified information. *Powell* addressed the classified information exception to FOIA but, to the extent that case can be read as conflicting with *Stein* – the Seventh Circuit authority on the same issue – *Stein* is binding on the Court. *See Stein*, 662 F.2d at 1254.

In any event, the Court need not resolve whether it can review the legitimacy of a classification designation in the context of CIPA where the statute does not provide for such review, because even if the Court had the authority to make such a determination, Defendant's challenge fails under the clear language of the Executive Order. The Court interprets Executive Orders in the same manner that it interprets statutes. *See Bassidji v. Goe*, 413 F.3d 928, 934 (9th Cir. 2005) ("As is true of interpretation of statutes, the interpretation of an Executive Order begins with its text."); *United States v. New Orleans Public Serv., Inc*., 553 F.2d 459, 476 (5th Cir. 1977) (canons of statutory construction apply equally to interpreting executive orders and further noting that "[w]here the words are plain there is no room for construction" (internal

quotation omitted)).  Namely, the Court looks first to the text of the Executive Order.  If the language is unambiguous, the inquiry ceases.  *See, e.g.*, *Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 710-11 (7th Cir. 2005).

The classification exception upon which Defendant relies provides that information should not be classified in order to "prevent embarrassment to a person, organization, or agency."  Under a plain reading of the Executive Order, the State of Israel does not constitute a person, organization, or agency.  "Agency" is defined as any Executive Agency[10] "and any other entity within the executive branch that comes into the possession of classified information."  60 Fed. Reg. 19825 (Apr. 17, 1995), §1.1(i).  The Order does not define "person" or "organization."  It does, however, refer to "foreign governments," even though it does not define this term.  If the Executive had intended the exemption to apply to foreign governments, presumably it would have included the term "foreign governments" in the embarrassment exclusion.  *See, e.g., United States v. Jones*, 372 F.3d 910, 913 n. 2 (7th Cir. 2004) ("Where the meaning of a statute is unambiguous, our sole task is to apply it straightforwardly to the facts at issue without referring to legislative history or other devices.").  Thus, even if Defendant's assertion is correct, the Executive Order does not preclude its classification.

Further, based on the submissions before the Court, there is simply no evidence that these materials are classified merely to prevent embarrassment to Israel.  Moreover, the materials submitted to the Court support the classified designation of the anticipated testimony of these agents.

---

[10] As defined in 5 U.S.C. § 105, "executive agency" means an Executive department, a Government corporation, and an independent establishment.

Defendant's argument that he had no notice "until the eleventh hour" that his case involved classified evidence that might require clearance is unavailing. The government has made clear throughout the hours of discovery hearings in this case that it has materials governed by CIPA and will be complying with the mandates of CIPA. (*See, e.g.,* Hr'g Tr., Feb. 17, 2005; Hr'g Tr., Mar. 21, 2005 (R. 178-1); Hr'g Tr., Apr. 22, 2005; Hr'g Tr., Sept.14, 2005 (R. 334-1)).

Finally, the Court makes its assessment that the testimony is classified based upon the submissions before it. As noted below, once the testimony is presented, the Court is ordering the government to review it in its entirety and confirm that it is classified. To the extent any such testimony is not classified, the Court will release such excerpts to the public.

### C. True Identities

The government also seeks to have the ISA agents' true names and identities remain undisclosed to the public, as well as Defendant Salah. The government does not even know their true identities. Instead, the government seeks to have these agents testify using the pseudonyms under which the ISA agents conduct all of their ISA affairs. Defendant objects to this procedure. The Chicago Tribune has no objection.

In Israel, it is a criminal violation to disclose the true identity of an ISA agent because of the sensitive and dangerous nature of the agent's work. (R. 367-1, Ex. A, ¶¶ 4, 19, 20.) This Israeli law is similar to the law in this country which penalizes disclosure of identifying information of a covert agent. *See* 50 U.S.C. § 421(a). Under Israeli law, the true identities of these agents – including their names, identifying information, and physical characteristics – are classified. (R. 367-1, Ex. A. ¶ 4.) Their names are therefore classified under Executive Order 12958. The government thus has met its burden of proving that these identities constitute

classified information.  (*Id.,* Exs. A, B.)  Accordingly, the Court orders that the ISA agents may testify using pseudonyms, and they do not have to disclose their true identities in court.

Allowing the ISA agents to testify using pseudonyms does not deprive Defendant of his Sixth Amendment right to confront these witnesses.  The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him."  *United States v. McGee*, 408 F.3d 966, 974 (7th Cir. 2005), quoting U.S. CONST., amend. VI.  "The clause protects the criminal defendant's right physically to face those who testify against him, and the right to conduct cross-examination."  *Id.* (quotation and citation omitted). Defendant will be able to physically face each of the ISA witnesses and to cross examine them. Although he will not know their true identities, they will identify themselves by their pseudonyms that they use in connection with their work.  Defendant has admitted that he never knew these individuals by their true identities, but only by the pseudonyms that they will use in court.  (R. 406, p. 41.)  Defendant remains free to cross examine these witnesses on the basis of their direct testimony or any other proper basis.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674, 683 (1986) (courts can "impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.").  The use of pseudonyms is also appropriate for the security of these witnesses.  *See United States v. Watson*, 599 F.2d 1149, 1157 (2d Cir. 1979) (finding no Confrontation Clause violation:  "given the seriousness of the threat and the extensiveness of the cross-examination that the court did permit, we believe that the judge acted within his discretion in limiting the scope of cross-examination so as to permit [witness who was in the Federal Witness Protection

Program] to maintain his concealed identity"); *United States v. Abu Ali*, 395 F.Supp.2d 338, 344 (E.D. Va. 2005) (on motion to suppress, court considered testimony from witnesses who, for security reasons, used pseudonyms).

### D. Review of Transcripts

Under Section 6 of CIPA, review of testimony differs from review of documents. Unlike a document which is static and which the Court can review in its entirety, live testimony is dynamic – neither the Court nor the parties can anticipate every question that counsel will ask these ISA witnesses nor every answer they will provide. As discussed above, the government has properly invoked CIPA based on the anticipated substance of the ISA agents' testimony, and Assistant Attorney General Fisher has certified that a public proceeding of the ISA agents' testimony may result in disclosure of classified information.

In order to ensure that all of the received testimony is in fact classified, however, the Court directs the United States to conduct a post-hearing review of the actual testimony of these ISA agents to confirm whether the government deems the entirety of each ISA agent's testimony classified. The Court directs the government to conduct this review within seven business days from the issuance of the final transcript. If the government deems the testimony not classified, the Court will promptly make it part of the public filing. This expedited review of the testimony will ensure that any information that is not classified will be made available to the public in a timely manner. *Cf. United States v. Poindexter*, 732 F. Supp. 165, 169 (D.D.C. 1990) (ordering disclosure to the public of edited version of testimony because it "will give assurances of fairness to both the public and the accused, as open criminal proceedings are properly designed to do, but it will do so without jeopardizing sensitive national security information."). If all of

17

the testimony is classified, it will remain under seal. *See United States v. North*, 713 F. Supp. 1452, 1453 (D.D.C. 1989) ("CIPA is a procedural statute, and the legislative history of it shows that Congress expected trial judges to fashion creative solutions in the interests of justice for classified information problems.") (citing H.R. Conf. Rep. No. 96-1436 (96th Cong., 2nd Sess., 11, 14 (1980), U.S. Code Cong. & Admin. News 1980, p. 4294).

Further, the Court directs the government to review any documents introduced into evidence during the testimony of these agents. To the extent these documents, or portions of them, are not classified, they will be available to the public no later than seven days from their admission into evidence.

### E. The First and Sixth Amendments

Because the government seeks to apply the agents' testimony to the merits of the suppression hearing and thus practically, the CIPA hearing will coincide with a portion of the suppression hearing, the government must establish that courtroom closure squares with the Constitution, even though CIPA independently covers the agents' testimony. Indeed, in assessing the merits of the government's motion and the motions to intervene, the Court is well aware that "[t]he First Amendment presumes that there is a right of access to proceedings and documents which have 'historically been open to the public' and where the disclosure would serve a significant role in the functioning of the process in question." *United States v. Eppinger*, 49 F.3d 1244, 1253 (7th Cir. 1995), quoting *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994), quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510, 104 S. Ct. 819, 824, 78 L. Ed. 2d 629 (1984). "[T]his fundamental premise is grounded in three important policy concerns. 'Public scrutiny over the court system serves to (1) promote

community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding.'" *In re Associated Press*, 162 F.3d at 506 (quoting *Grove Fresh*, 24 F.3d at 897); *Eppinger*, 49 F.3d at 1252-53 (same). The presumption of openness applies to suppression hearings as well as trials, *Waller v. Georgia*, 467 U.S. 39, 46, 104 S. Ct. 2210, 2215, 81 L. Ed. 2d 31, 38-39 (1984), and "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise*, 464 U.S. at 510, 104 S. Ct. at 824, 78 L. Ed. 2d at 638. *See also Eppinger*, 49 F.3d at 1253; *United States v. Ladd*, 218 F.3d 701, 704 (7th Cir. 2000).

Similarly, "the Sixth Amendment right of the accused [to a public trial] is no less protective of a public trial than the implicit First Amendment right of the press and public." *Waller*, 467 U.S. at 46, 104 S. Ct. at 2215, 81 L. Ed. 2d at 38. "[U]nder the Sixth Amendment any closure of a suppression hearing over the objections of the accused must meet the test set out in *Press-Enterprise* and its predecessors." *Id.* at 47, 104 S. Ct. at 2216, 81 L. Ed. 2d at 39. Specifically, "[u]nder *Press-Enterprise*, the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Id.* at 48, 104 S. Ct. at 2216, 81 L. Ed. 2d at 39.

## 1. Overriding Interests and Court Findings[11]

The closure of the courtroom to protect the CIPA governed ISA testimony is justified under the mandates of *Press Enterprise*. This justification defeats Defendant's and the intervenors' arguments for an open hearing during the ISA agents' testimony.

The United States has rebutted the presumption of openness based on its showing that the anticipated testimony is classified and governed by CIPA as addressed above. *See Waller*, 467 U.S. at 45, 104 S. Ct. at 2215, 81 L. Ed. 2d at 38 (the right to an open courtroom "may give way in certain cases to other rights or interests such as ... the government's interest in inhibiting disclosure of sensitive information."). The United States has an overriding interest in maintaining the agents' sensitive testimony – including testimony regarding intelligence gathering methods and counterintelligence measures – as classified in order to protect the national security of Israel and the relationship between Israel and the United States of sharing national security information. (R. 367-1, Ex. B ¶ 4.) *See Department of Navy v. Egan*, 484 U.S. 518, 527, 108 S. Ct. 818, 824, 98 L. Ed. 2d 918, 928 (1988) (recognizing government's "compelling interest" in withholding national security information). Public disclosure of this classified testimony would damage foreign relations and negatively impact national security. (R. 367-1, Ex. B ¶¶ 4, 8.) *See Central Intelligence Agency v. Sims*, 471 U.S. 159, 175, 105 S. Ct. 1881, 1891, 85 L. Ed. 2d 173, 187 (1985) ("The government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service") (quotation omitted); *United States v. Yunis*, 867 F.2d 617, 623 (D.D.C. 1989). That interest is

---

[11]    The Court incorporates by reference its findings in other Sections of this Opinion.

more than just an assertion – it is supported by uncontested evidence. (R. 367-1, Ex. A.) An open courtroom will defeat the overriding interest in maintaining the classification of this information because once it becomes public, the Court cannot reverse its disclosure. Thus, Defendant's "unconstitutional as applied" argument fails.[12]

Even if the overriding need to protect the classified information at issue in this case did not support closure of the courtroom, the Court alternatively would seal the courtroom during the testimony of the ISA agents based on another overriding interest that satisfies *Press-Enterprise*. Based on the uncontested evidence set forth in detail in Exhibit A, these ISA agents face a serious, legitimate risk of grave danger if they were publicly identified. (R. 367-1, Ex. A ¶¶ 8-14; Ex. B.) For example, various internet sites post descriptions and sketches of ISA agents so that the agents can be identified and targeted, and at least one internet site has offered a cash reward for information regarding the true identities of ISA agents. (*Id.,* Ex. A ¶¶ 10, 20.) Closing the courtroom during their testimony is thus warranted. *See, e.g., United States v. Abuhamra*, 389 F.3d 309, 324 (2[d] Cir. 2004) ("The government's strong and legitimate interest in protecting confidential sources from premature identification is undeniable. Identification not only compromises the government's ability to use such sources in other investigations, it may expose them to retaliation by those against whom they have cooperated."); *Sevencan v. Herbert*, 316 F.3d 76, 84 (2[d] Cir. 2002) (in habeas context, finding that trial court's closing of courtroom comported with *Waller* where closing protected safety of the undercover officer); *Brown v.*

---

[12] The Court does not hold that a *Press-Enterprise* constitutional analysis is necessary for all testimony governed under CIPA. Because of the unique nature of the classified testimony in this case and the overlap between the CIPA hearing and the suppression hearing, such an analysis is appropriate here. *See generally United States v. Ressam*, 221 F.Supp.2d 1252, 1259-1261 (W.D. Wash. 2002).

*Artuz*, 283 F.3d 492, 501 (2ᵈ 2002) (in habeas context, finding that officer's safety justified closing courtroom).

## 2.     Narrowly Tailored and Alternative Procedures

The closure of the courtroom is narrowly tailored to address the CIPA interest and the security concerns. The courtroom will only be closed to the public during the testimony of the ISA agents. The remaining witnesses, including the Israeli police officers whom the government anticipates calling at the hearing, will testify in an open courtroom, and the attorneys' opening and closing statements will be public.

Defendant argues that the classification designation will apply to the testimony of the other witnesses in the case, including Salah's own testimony because he intends to testify about the information gathered by the ISA and the techniques used by them. Based upon the record before the Court, there is no indication that such testimony will be classified, nor has the government moved to have the courtroom closed during it. Second, the government's post-hearing review of the testimony will ensure that non-classified information – to the extent there is any – is immediately made available to the public.

Finally, both Defendant and the Chicago Tribune make an alternative proposal to closing the courtroom for the ISA agents' testimony – namely, to bifurcate the ISA agents' testimony and have the ISA agents testify with the public present, and have the Court excuse the public from the courtroom when questions arise that will likely elicit classified information. First, the government has submitted uncontested evidence that the entirety of the ISA agents' testimony will be classified. Thus, the Chicago Tribune's reliance on *United States v. Lonetree*, 31 M.J. 849 (C.M.R. 1990), is not instructive. Second, as noted by the court in *Poindexter*, "[a]ssuming

that, somehow, the less highly classified of the initial or primary questions could be asked separately from the more sensitive ones – at a great cost in the continuity of questioning that counsel is entitled to maintain for effectiveness – little, if anything, would be gained by such a process." 732 F. Supp. at 168. Such a bifurcated procedure would be extremely disruptive, disjointed, and impractical. Compounding this is the fact that, pursuant to Section 9 of CIPA, the courtroom must be secured in advance of any classified testimony. *See* 18 U.S.C. App. 3, § 9. Thus, each time the Court excused the public, the courtroom would have to be re-secured before a witness could provide any classified information. Such a timely procedure adds to the impracticability of this bifurcation proposal.

Instead, the Court finds that a post hearing review of a transcript of the ISA agents' testimony, as detailed above, is the only reasonable alternative available here. The seven day time limit described above will ensure that the public has timely access to appropriate materials.

## II.     Other Security Measures

The government has requested other security measures for the ISA agents. It is clear that a "judge has wide discretion in determining what is necessary to maintain the security of the courtroom." *United States v. Brooks*, 125 F.3d 484, 502 (7th Cir. 1997).

### A.     Light Disguise

The government seeks permission to have the ISA agents testify in light disguise for "the protection of their identity, both for their ability to continue covert work as well as their safety and the safety of their families." (R. 367-1, p. 21.) Defendant opposes this measure.

The appearance of these agents presents legitimate security issues. *See id.* Although light disguise would be appropriate in some circumstances, *see, e.g.*, *United States v. Dumeisi*,

No. 03 CR 664, R. 367-1, Ex. C), it is not necessary here where the courtroom will be closed to the public.  The government contends that Defendant Salah and others in the courtroom will be able to publicly identify these agents if they do not wear light disguise.  These are the same agents that previously questioned Defendant Salah.  The government has not submitted any evidence or argument that these agents were in disguise at the time of such questioning, thus Salah presumably has already physically seen them at length.  The only other individuals in the courtroom will be defense attorneys, court personnel who have security clearances, and federal agents.  Without any evidence of why the extra precaution of light disguise is necessary in a closed courtroom, the Court denies the government's request without prejudice.  The Court orders that no one present in the courtroom can disclose or describe the physical identity of these ISA agents.

### B. Non-Public Entrance

The ISA agent witnesses may, however, use a private entrance to the courthouse and the courtroom.  *See United States v. George*, Crim. Nos. 91-0521(RCL), 92-0215(RCL), 1992 WL 200027, at *3 (D.D.C. July 29, 1992) (permitting undercover CIA witnesses to "enter and exit the courthouse and the courtroom without using the public entrances").  This procedure will assist in protecting the identity of these witnesses and ensuring their safety.  Defendant does not object to this request.  Accordingly, the Court grants the government's request for the ISA agents to use a private entrance to the courthouse and courtroom.

The government's motion for certain procedures is granted in part. It is granted regarding closure of the suppression hearing to the public for the testimony of the ISA agents only. The other portions of the hearing – including the government's additional four or five witnesses, Defendant's witnesses, and the attorney's opening statements and closing arguments – will remain open to the public. It is also granted as to the request for the ISA agents to have non-public access to the courthouse and the courtroom during the suppression hearing. It is denied without prejudice with respect to the request that the ISA agents wear light disguise during their testimony.

The Chicago Tribune's motion to intervene and the CCR's motion to intervene are both granted for the limited purpose of challenging the government's motion to close the ISA agents' testimony to the public. The Court denies both the Chicago Tribune's and the CCR's request to have the ISA agents testify in public. The Court grants the Chicago Tribune's request to have timely public access to the transcript of non-classified portions of the testimony.

The Court further orders that within seven business days of the availability of the final transcript of these agents' testimony, the government must submit to the Court a proposed public version of the transcript, redacting any testimony designated as classified. Upon review, the Court will make any unredacted transcripts part of the public record in this case. The Court further orders the government to review any documents introduced into evidence during the testimony of the ISA agents. To the extent these documents, or portions of them, are not

---

[13] Both Defendant Salah and Defendant Ashqar have raised concerns regarding the impact of CIPA at trial. The issue of trial procedures is currently not before the Court. This ruling pertains to the suppression hearing only.

classified, they will be available to the public no later than seven business days from their admission into evidence.

Dated:  January 31, 2006          ENTERED


_____
AMY J. ST. EVE
United States District Judge