**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 CR 0978 |
| | ) | |
| MOUSA MOHAMMED ABU MARZOOK, | ) | |
| MUHAMMAD HAMID KHALIL | ) | |
| SALAH, and ABDELHALEEM | ) | |
| HASAN ABDELRAZIQ ASHQAR, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On August 19, 2004, a Grand Jury returned a multiple-count, Second Superseding Indictment (the "Indictment") against Defendant Muhammad Hamid Khalil Salah ("Salah" or "Defendant") and his Co-Defendants, Abdelhaleem Hasan Abdelraziq Ashqar ("Ashqar") and Mousa Mohammed Abu Marzook ("Marzook"). Defendant Salah moves to dismiss Count I of the Indictment. For the reasons stated below, the Court denies Salah's motion.

**BACKGROUND**

**I.     Overview of Count I**

Count I of the Indictment charges Defendant Salah with conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. 1962(d). Count I is premised upon and related to Salah's alleged support of the Hamas terrorist organization, both prior to and after the United States designated Hamas as a Specially Designated Terrorist Organization and a Foreign Terrorist Organization ("FTO"). The

Indictment identifies Hamas, a group of individuals associated in fact, as a RICO enterprise. (R. 59-1; Second Superseding Indictment at ¶ 2.) It alleges that Hamas, among other things, has called for violent terrorist attacks and engaged in numerous terrorist attacks aimed at Israeli military personnel, police officers, and civilians. (*Id*. at ¶ 1B.)

## II.     Alleged Overt Acts

### A.     Alleged Pre-designation Activities

The Indictment alleges that Salah committed the following overt acts in furtherance of the purported RICO conspiracy before the United States designated Hamas as a Specially Designated Terrorist Organization or a FTO. Beginning no later than 1990, Salah allegedly participated in a Hamas security committee based in the United States. (*Id*. at ¶ 24C.) As a member of the security committee, Salah purportedly "compiled information on . . . Palestinian men . . . and their capacity to participate in terrorist activities against Israel." (*Id*.) In approximately September 1992, Salah allegedly purchased airline tickets in Chicago to facilitate the training of two co-conspirators. (*Id*. at ¶ 24E.) Those co-conspirators then purportedly used the tickets Salah had purchased to travel to the Middle East and receive advanced training in bomb-making. (*Id*.)

The Indictment alleges that in August 1992, Salah met and conferred with Co-Defendant Marzook and a co-conspirator "regarding the need to revitalize Hamas terrorist operations in the West Bank." (*Id*. at ¶ 24F.) To further this objective, Salah allegedly traveled from Chicago to the West Bank for meetings at which he purportedly discussed terrorist and political activities in the West Bank and the Gaza Strip. (*Id*. at ¶ 24G.) While in the West Bank, Salah allegedly learned that Hamas needed money to purchase weapons and other military supplies to carry out

2

terrorist activities, and purportedly provided a co-conspirator with $50,000 from his bank in Chicago to make such purchases. (*Id*. at ¶ 24H.) The Indictment alleges that when Salah later returned to Chicago, he received a $50,000 check from Marzook as repayment. (*Id*. at ¶ 24K.)

In approximately September 1992, Salah allegedly met with a Hamas leader and learned that Hamas had recruits who were prepared to carry out terrorist attacks, provided that additional funding was available. (*Id*. at ¶ 24J.) He further learned that certain individuals were purportedly providing information about Hamas activities to Israeli authorities. (*Id*.) Salah allegedly provided this information to Marzook and others. (*Id*.) In approximately December 1992, Salah purportedly attempted to have a fake passport made for a co-conspirator in Chicago. (*Id*. at ¶ 24N.) Also in December 1992, Marzook allegedly contacted Salah to discuss Israel's deportation of 400 Hamas members. (*Id*. at ¶ 24O.) Between approximately December 29, 1992 and January 25, 1993, Salah allegedly "received into his Chicago based bank accounts a series of wire transfers, totaling approximately $985,000, from accounts with [Marzook], to be distributed to Hamas members in the West Bank and Gaza Strip." (*Id*. at ¶ 24R.) Salah allegedly traveled from Chicago to the West Bank and the Gaza Strip in approximately late December 1992 to assess the ability of Hamas to continue to function and carry out terrorist attacks following the deportations, and to deliver money to Hamas members. (*Id*. at ¶ 24Q.)

Salah purportedly made another trip from the United States to the West Bank on or about January 13, 1993. (*Id*. at ¶ 24S.) While en route to the Middle East, Salah allegedly stopped in London, England to meet with a co-conspirator. (*Id*. at ¶ 24T.) The Indictment alleges that after Salah arrived in Israel, he arranged to have approximately $230,000 from his bank accounts in Chicago transferred to him for distribution to Hamas members in the West Bank and the Gaza

3

Strip.  (*Id*. at ¶ 24U.)  The Indictment further alleges that while Salah was in Israel, he met with a co-conspirator and various members of Hamas to discuss terrorist activities and provide them with money.  (*Id*. at ¶¶ 24V, W, X.)  On or about January 25, 1993, while in Israel, Israeli authorities arrested Salah.  (*Id*. at ¶ 24Y.)  He remained incarcerated in Israel until approximately 1997.  (*Id*. at ¶ 1J.)  Salah allegedly retained his membership in Hamas during this term of imprisonment.  (*Id*.)

### B. Alleged Post-designation Activities

The Indictment further alleges that in 1997, following his term of imprisonment in Israel, Salah returned to the United States and continued working for Hamas by recruiting Individual A to join Hamas and travel to the Middle East.  (*Id*. at ¶ 24OO.)  Salah allegedly assisted Individual A with travel arrangements to Israel to conduct Hamas-related business.  (*Id*. at ¶ 24PP.)  Individual A, at the direction of Salah, then purportedly traveled to Israel and the West Bank, provided money to the family of an imprisoned co-conspirator, attempted to meet with the imprisoned co-conspirator, scouted locations in and around Jerusalem for suitable targets for future terrorist attacks, attempted to enter the Gaza Strip to visit with a Hamas leader, and met with various Hamas members.  (*Id*. at ¶¶ 24QQ, RR, SS, TT, UU, VV.)  During Individual A's trip to Israel, he allegedly discussed the progress that he was making with Salah, and Salah allegedly discussed Individual A's trip with Hamas members located in the West Bank.  (*Id*. at ¶¶ 24WW, XX.)  According to the Indictment, when Individual A returned to the United States, Salah debriefed him regarding his trip, told him that he was pleased with the success of the trip and informed him that future trips would be requested.  (*Id*. at ¶¶ 24YY, ZZ.)  Individual A also

4

purportedly provided Salah with a photograph he had received of Salah with two co-conspirators. (*Id*. at ¶ 24AAA.)

Additionally, in or about April 2001, Salah allegedly provided sworn answers in a civil lawsuit filed in the Northern District of Illinois, *Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.*, No. 00 C 2905, that he knew to be false. (*Id*. at ¶ 24BBB.)

## ARGUMENT

### I. Standard

Federal Rule of Criminal Procedure 12(b)(2) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). "When considering a motion to dismiss an indictment, a court assumes all facts in the indictment are true and must 'view all facts in the light most favorable to the government.'" *United States v. Segal*, 299 F. Supp. 2d 840, 844 (N.D. Ill. 2004) (quoting *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999)). "An indictment is constitutionally sufficient if it states all of the elements of the offense charged, informs the defendant of the nature of the charges so that he can prepare a defense, and enables the defendant to assess any double jeopardy problems the charge may raise." *United States v. Stout*, 965 F.2d 340, 344 (7th Cir. 1992). A court must "consider the indictment as a whole to determine if it meets [these] requirements." *Id.* In addition, "arguments raised in a motion to dismiss that rely on disputed facts should be denied." *United States v. Caputo*, 288 F. Supp. 2d 912, 916 (N.D. Ill. 2003) (citing *United States v. Shriver*, 989 F.2d 898, 906 (7th Cir. 1992)). "An indictment, or a portion thereof, may be dismissed if it is otherwise defective or subject to a defense that may be decided solely on issues of law." *United States v. Labs of Virginia, Inc.*,

5

272 F. Supp. 2d 764, 768 (N.D. Ill. 2003); *see also United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) ("[t]he propriety of granting a motion to dismiss an indictment under [Fed. R. Crim. P.] 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact. If a question of law is involved, then consideration of the motion is generally proper." (quotations and citations omitted)).

## II.     Political Question

Defendant Salah contends that Count I, in designating Hamas as a RICO enterprise, presents non-justiciable political questions. The political question doctrine "rests primarily on the principle of separation of powers and the policy of judicial self-restraint." *Flynn v. Shultz*, 748 F.2d 1186, 1190 (7th Cir. 1984) (citations omitted). In *Baker v. Carr*, 369 U.S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962), the Supreme Court set forth a comprehensive list of factors indicating when a case involves a political question:

> [p]rominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id*. at 217, 82 S. Ct. at 710. "Unless one of these formulations is inextricable from the case at bar, there should be no dismissal for non-justiciability on the ground of a political question's presence." *Id*.

Salah argues that Count I implicates a political question because "[t]he determination of whether or not Hamas is a racketeering enterprise or whether Mr. Salah was part of a RICO conspiracy lacks judicially discoverable and manageable standards for resolution, presents policy determinations only appropriate for non-judicial discretion, and poses serious potential judicial interference with coordinate branches of government." (R. 260-1; Salah's Mot. to Dismiss Count I at 4.) In support of this assertion, Salah claims that his "ongoing efforts . . . to obtain 'classified documents' [and] [t]he potential political (as well as jurisdictional) problems with the Court ordering a foreign sovereign . . . to produce such documents and testimony, underscores the lack of manageable judicial standards to resolve such critical due process issues." (*Id.*) This discovery matter, which the Court has addressed on multiple occasions,[1] does not bear on whether manageable standards exist and does not provide a basis to dismiss Count I of the Indictment.

Congress has specifically defined a RICO "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This definition provides the basis to determine the sufficiency of the allegations that Hamas, a group of individuals associated in fact, constitutes a RICO enterprise. *See*, *e.g.*, *United States v. Turkette*, 452 U.S. 576, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981) (interpreting § 1961(4)); *Richmond v. Nationwide Cassel L.P.*, 52

---

[1] The Court dealt with this matter at numerous hearings including those that took place on August 4, 2004, September 14, 2005, December 22, 2005, and January 17, 2006, and it addressed this issue in its January 31, 2006 opinion. Furthermore, the Israeli authorities agreed to waive the classification designation as to Defendant Salah and his counsel regarding many documents and significant testimony at Salah's suppression hearing. *See United States v. Marzook*, 412 F. Supp. 2d 913, 917 (N.D. Ill. 2006).

F.3d 640 (7th Cir. 1995) (finding that plaintiff failed to adequately allege a RICO enterprise). The Seventh Circuit also has developed detailed jury instructions on the definition of "enterprise." *See* Seventh Circuit Criminal Pattern Jury Instructions, 18 U.S.C. § 1961(4), at 271 (1998). These factors provide manageable standards to allow the jury and court to determine whether Hamas is a group of individuals associated in fact within the definition of § 1961(4). *Cf. Flynn*, 748 F.2d at 1193 (holding that the Hostage Act contained no "standards upon which judicial review could be undertaken" where the terms of the statute and the legislative history provide no indication as to the meaning of the phrase "unjustly deprived").

Furthermore, Defendant Salah has not indicated how the determination of whether Hamas constitutes a RICO enterprise implicates policy determinations only appropriate for non-judicial discretion or poses serious potential judicial interference with coordinate branches of government. Indeed, none of the cases he cites for this proposition address whether designating a group of individuals as a RICO enterprise implicates the political question doctrine. Salah seems to rest his argument on the theory that because Hamas is a "political force" it cannot be a "racketeering enterprise." (R. 260-1; Salah's Mot. to Dismiss Count I at 2.) The Supreme Court has stated, however, that the political question doctrine "is one of 'political questions,' not one of 'political cases.'" *Baker*, 369 U.S. at 217, 82 S. Ct. at 710. Additionally, the Seventh Circuit "has directly held that governmental or public entities fit within the definition of 'enterprise' for purposes of RICO." *United States v. Kovic*, 684 F.2d 512, 516 (7th Cir. 1982) (citations omitted) (affirming RICO conviction where the Chicago Police Department constituted a RICO enterprise); *United States v. Murphy*, 768 F.2d 1518, 1531 (7th Cir. 1985) (identifying the Circuit Court of Cook County as a RICO enterprise); *United States v. Lee Stoller Enters., Inc.*, 652 F.2d

1313, 1319 (7th Cir. 1981) (finding that the office of Madison County Sheriff was a RICO enterprise); *United States v. Grzywacz*, 603 F.2d 682, 687 (7th Cir. 1979) (finding that the city police department was a RICO enterprise). RICO cases do not pose political questions simply because they charge political entities as RICO enterprises.

Moreover, "it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Baker*, 369 U.S. at 211, 82 S. Ct. at 707. Indeed, the fact that Hamas is a "foreign entit[y] does not immunize [it] from the reach of RICO."[2] *Alfadda v. Fenn*, 935 F.2d 475, 479 (2d Cir. 1991); *see also United States v. Al-Arian*, 308 F. Supp. 2d 1322, 1349-50 (M.D. Fla. 2004) (upholding a RICO conspiracy claim that charged the Palestinian Islamic Jihad-Shiqaqi Faction, a designated FTO, as a RICO enterprise); *United States v. Parness*, 503 F.2d 430, 439 (2d Cir. 1974) ("we find no indication that Congress intended to limit Title IX to infiltration of domestic enterprises"). The Second Circuit has explained that RICO "in no way involves regulation of the internal affairs of enterprises subject [to] the sovereign power of foreign states." *Parness*, 503 F.2d at 440. Accordingly, Count I does not pose a non-justiciable political question because none of the *Baker* factors are present in this case.

### III. Alleged Overt Acts

---

[2] Because a foreign organization may be a RICO enterprise, Salah's argument that RICO was not intended to include a foreign resistance organization such as Hamas fails. Additionally, Salah's argument that RICO does not apply because Hamas has carried out no acts against the United States fails because Count I specifically alleges that Hamas' activities have impacted the United States. For example, Hamas members have purportedly claimed credit for terrorist operations that resulted in the death of American citizens. (R. 59-1; Second Superseding Indictment at ¶ 24II.)

Additionally, Defendant Salah argues that the alleged overt acts in Count I fail to support a RICO conspiracy claim against him.

### A. Extra-territorial Predicate Acts

Salah moves to dismiss Count I on the basis that it "alleges only extra-territorial predicate acts non-cognizable under RICO." (R. 260-1; Salah's Mot. to Dismiss Count I at 11.) The Indictment, however, contains numerous allegations of overt acts that Salah committed in the United States. Count I, for example, alleges that Salah: (1) was a member of a United States-based Hamas security committee, (R. 59-1; Second Superseding Indictment at ¶ 24C); (2) purchased airline tickets in Chicago, Illinois to facilitate the training of certain purported co-conspirators, (*id.* at ¶ 24E); (3) moved money in and out of a bank based in Chicago in connection with Hamas-related activities, (*id.* at ¶¶ 24H, R); and (4) attempted to obtain a false passport in Chicago for a purported co-conspirator. (*Id.* at ¶ 24N.) These allegations make clear that Count I is not premised solely on extra-territorial jurisdiction.

### B. Alleged Pre-designation Racketeering Activities

Additionally, Salah contends that the predicate acts that he allegedly committed before the designation of Hamas as a Specially Designated Terrorist Organization in 1995 or the designation of Hamas as a FTO in 1997 are protected First Amendment conduct. Salah specifically challenges the purported predicate acts of providing material support to Hamas. The material support statute "subjects to criminal liability anyone who, within the United States or subject to the jurisdiction of the United States, knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so." *Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.*, 291 F.3d 1000, 1025 (7th Cir. 2002) (citing 18

U.S.C. § 2339B(a)(1)). The government concedes that "a violation of the material support statute, 18 U.S.C. § 2339B, cannot be sustained until Hamas was designated a FTO . . . [and] to the extent the RICO charge relies on a violation of Section 2339B as a predicate act, certain evidence for that predicate act must post-date Hamas' designation as a FTO." (R. 442-1; Gov't's Resp. to Salah's Mot. to Dismiss at 6.) The government, therefore, cannot rely on a violation of § 2339B as a predicate act if the only conduct underlying the purported violation predates the designation of Hamas as a Specially Designated Terrorist Organization or a FTO. The Court, however, denies Salah's request that it strike from the Indictment all references to pre-designation conduct and to prohibit the government from relying on any such conduct where it is not tied to Hamas' designation as a Specially Designated Terrorist Organization or a FTO because Salah has provided no legal justification for those broad requests. Indeed, even before the United States designated Hamas as a FTO, it was illegal to agree to conduct the affairs of an enterprise through a pattern of racketeering activity.

      **C.**      **Alleged Post-designation Racketeering Activities**

Salah also argues that the Court should dismiss Count I because Individual A,[3] purportedly the government's sole source of information regarding Salah's post-designation conduct, is unreliable.[4] Rule 12(b)(2) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."

---

[3] In his motion to dismiss, Salah refrains from identifying Individual A by his name or alias even though that information was available to Salah. The Court also refers to this informant as Individual A.

[4] Salah asks the Court to delay its determination of Individual A's reliability pending full development of the facts and a hearing. The Court declines to do so.

11

Fed. R. Crim. P. 12(b)(2). "The sufficiency of a criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). "[A]rguments raised in a motion to dismiss that rely on disputed facts should be denied." *Caputo*, 288 F. Supp. 2d at 916 (citing *Shriver*, 989 F.2d at 906). Salah's credibility attack on Individual A is not a matter appropriately resolved on a motion to dismiss. The credibility of a witness is left for the trier of fact. *See*, *e.g.*, *United States v. Van Wyhe*, 965 F.2d 528, 531 (7th Cir. 1992). Accordingly, Count I of the Indictment stands.

## CONCLUSION

For the reasons stated above, the Court denies Salah's motion to dismiss Count I of the Indictment.

Dated: April 4, 2006            ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge