**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 CR 978 |
| | ) | Judge Amy J. St. Eve |
| ABDELHALEEM ASHQAR, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR ATTORNEY**
**PARTICIPATION IN VOIR DIRE**

Comes now Defendant Abdelhaleem Hasan Abdelraziq Al Ashqar ("Dr. Ashqar"), with his attorneys, William B. Moffitt and Andrea D. Lyon, pursuant to Rule 24(a) of the Federal Rules of Criminal Procedure, as well as the Fifth, Sixth and Eighth Amendments to the United States Constitution, and respectfully submits this memorandum of law in support of his motion to permit counsel to participate in voir dire.

**A.  Introduction**

Many federal judges choose to exercise their Rule 24(a) discretion by deciding to personally conduct all voir dire.  While it is true that the Supreme Court has never held that judges are compelled to permit defense counsel an opportunity to question prospective jurors[1],

---

[1] In contrast, some courts do see constitutional rights implicated when attorneys are not allowed to participate in voir dire. *See, e.g., Maddux v. State,* 825 S.W.2d 511, 514 (Tex. App. 1992) ("The right to pose such questions is pat of the *right to counsel under ... the Texas constitution ...* ").  *See also, Oden v. State*, 90 N.W.2d 356, 358 (Neb. 1958) ("The usual and better practice is to permit counsel to conduct the examination under the direction and supervision of the court."); *State v. Hankins*, 441 N.W.2d 854, 866 (Neb. 1989) ("The defendant... has the right to put pertinent questions to prospective jurors..."). *Cf. Strube v. State*, 739 P.2d 1013, 1016 (Okl. Cr. 1987) ("Rule six, as well as the ABA Standards Relating to Trial Courts, Section 2.12 (1976) and the ABA Standards for Trial by Jury, section 15-2.4 (1978), make clear that participation by ... the defense in voir dire, at least in criminal proceedings, is a

*see e.g., United States v. Cuke,* 409 F.2d 669, 671 (4th Cir. 1969) (claim that Rule 24(a) is unconstitutional is "frivolous"), *cert. denied*, 397 U.S. 1062 (1970); *Turner v. Commonwealth,* 221 Va. 513, 273 S.E.2d 36, 41 (1980), *cert. denied*, 451 U.S. 1011 (1981), *rev'd on other grounds*, 476 U.S. 28 (1986), in recent years, federal courts have begun to recognize the importance of attorney participation in voir dire. *See, e.g., United States v. Ible*, 630 F.2d 389 (5th Cir. 1980); *United States v. Ledee,* 549 F.2d 990 (5th Cir. 1977). In *Ible*, 630 F.2d at 389 n.8, the Court stated:

> [W]hile Federal Rule of Criminal Procedure 24(a) gives wide discretion to the trial court, voir dire may have little meaning if it is not conducted at least in part by counsel. The "federal" practice of almost exclusive voir dire examination by the court does not take into account the fact that it *is the parties, rather than the court, who have a full grasp of the nuances and the strengths and weaknesses of the case ...* Experience indicates that in the majority of situations questioning by counsel would be more likely to fulfill the need than an exclusive examination in general terms by the trial court.
>
> \* \* \* \* \* \*
>
> More recently, records reviewed in this court reflect a new pattern by trial courts. The trial judge will explain the nature of the case in general terms, point out the parties and counsel, cover the most basic points of law (burden of proof, presumption of innocence, right to remain silent, etc.), explain the procedures and schedule to be followed and then turn the questioning over to trial counsel. We encourage this approach.

630 F.2d at 395.

Due to the sensitivity of the issues in this case, including terrorism, publicity and race, defense counsel asks to be permitted to participate in voir dire to ensure a jury selection process that is effective, rational, fair and one which protects Mr. Bass's Sixth Amendment right to a fair trial.

## B. Terrorism

---

right.) Indeed, as this Court noted in colloquy with counsel, such participation was allowed in U.S. A. v. Ryan, 02 CR 506, before Judge Rebecca Pallmeyer, and in a number of other federal prosecutions in this District in recent cases.

As an emotional and political issue, the charge of participation in terrorist activities is qualitatively different from any other, calling for a more meticulous decision-making standard on critical legal issues..

### C. The Judge As Referee Or Advocate?

Each of the participants in the voir dire process in a capital case has a role which is highly differentiated.  It is unwise and indeed  unseemly for a trial judge to be placed in a position of pulling a juror in one direction or another[2] (i.e., trying to rehabilitate) when the juror is clearly uncertain of his own views or, perhaps, even dissembling.[3]

More importantly, it is clear that the judge simply can not know enough of the facts from the defense perspective (or indeed the prosecution's perspective)  to do a thorough job.  "This Court has previously stressed that voir dire examination not conducted by counsel has little meaning." *United States v. Corey*, 625 F.2d 704, 707 (5th Cir. 1980).  While a defense lawyer's failure to adequately cover all critical aspects of voir dire is almost certain to  meet constitutional

---

[2]  "The purpose of voir dire is not to elicit from a potential juror the correct answer; it is to draw out the potential juror's views, biases, and inclination and to provide both counsel and the court  . . .  with sufficient information with which to challenge potential jurors intelligently-- whether for cause of peremptorily." *State v. Biegenwald*, 126 N.J. 1, 39, 594 A.2d 172 (1991).

[3]  Given the highly charged topic of terrorism, an analogy can properly be drawn to the difficulties faced in jury selection in a capital case. Citizens are unfortunately not always candid during death qualification.  They may wish to "get on" or "get off" the jury depending on their motivation. *See, e.g., Gray v. Mississippi*, 107 S.Ct. at 2048, 2050 n. 4, where the "plurality . . . hints that . . . potential jurors may not have been properly excludable for cause because they were merely feigning objections to capital punishment in order to avoid jury service."  Although the dissent argues "the Constitution certainly permits the exclusion for cause of potential jurors who lie under oath about their views of capital punishment", no one suggests such jurors do not exist. *Gray*, 107 S.Ct. at 2061 (Scalia, J., dissenting).

standards,[4] no such presumption of competency or tactical motivation will aid a trial judge in his

lonely journey across the jury selection minefield.[5]

### D. Race

The deep concern of federal courts about the influence of racial prejudice in capital

sentencing is well- and long-established. Beginning with *Furman v. Georgia*, 408 U.S. 238

(1972), and continuing through *McCleskey v. Kemp*, 481 U.S. 279 (1987), the Supreme Court has

struggled with this issue, acknowledging in *McCleskey* that the statistical evidence "indicates a

discrepancy that appears to correlate with race." 481 U.S. at 312. Declining to overturn an entire

capital sentencing system due to this improper influence, the Court has attempted to tackle the

problem in other ways. Principal among them is requiring special procedures in jury selection:

> Because of the range of discretion entrusted to a jury in capital sentencing
> hearings, there is a unique opportunity for racial prejudice to operate but remain
> undetected. On the facts of this case, a juror who believes that blacks are
> violence-prone or morally inferior might well be influenced by that belief in
> deciding whether petitioner's crime involved the aggravating factors specified
> under Virginia law. Such a juror might be less favorably inclined towards
> petitioner's evidence of mental disturbance as a mitigating circumstance. More
> subtle, less consciously held racial attitudes could also influence a juror's decision
> in this case. Fear of blacks, which could easily be stirred up by the violent facts of
> petitioner's crime, might incline a juror to favor the death penalty.

---

[4] *But see generally, Marzullo v. Maryland*, 561 F.2d 540, 546 (4th Cir. 1977), *cert. denied*, 435 U.S. 1011 (1978) (The attorney's conduct at the voir dire . . . failed to protect client); *Cannellas v. McKenzie*, 160 W.Va. 431, 236 S.E.2d 327, 331 (1977) ("other instances" of ineffective assistance included counsel's failure to interrogate prospective jury members about whether they had read prejudicial newspaper articles immediately before trial).

[5] Again, analogizing to a capital prosecution, *see, e.g., State v. Williams*, 113 N.J. 393, 420, 550 A.2d 1172 (1991) (reversing death penalty case) ("Based on an independent review . . . we find the trial court relied much too heavily on close-ended questions, and on several occasions did not ask adequate follow up questions. . . . ").

*Turner v. Murray*, 476 U.S. at 35. Because of its position of authority, this Court is in a worse position than counsel to elicit highly personal and embarrassing admissions of racial bias. As such, it is vital that Dr. Ashqar's counsel be afforded the opportunity to elicit responses from jurors which would reveal any possible racial prejudices.

### E. Religion

The public reaction to the tragedy of 9/11, the Iraq war, and all of the myriad issues accompanying the question of terrorism, of necessity involves questions about religion, religious feelings, and attitudes towards religions other than one's own, including Islam. There are people who believe that Islam is a violent religion, or a fanatic religion.

As Dr. Suwolf states in her groundbreaking work, Jury Thinking (Lexis/Nexis 2005) at page 10: "Once we realize that the law says we are entitled to know the "scruples" of any juror on any issue relevant to our trial, it is clear that unless we have a working knowledge of religious beliefs, the right to voir dire cannot be competently exercised." [6]

While Dr. Ashqar's proposed questionnaire does attempt to ferret out some of these altitudes, religious prejudice, like race, is an important factor which because (again) of its position of authority, this Court is in a worse position than counsel to elicit highly personal and embarrassing admissions of religious bias.

---

[6] On the same page of Jury Thinking Dr. Sunwolf directs us to see for example *State v. Davis*, 504 N.W. 2d 767 (1993) wherea Minnesota court upheld a prosecutor's peremptory challenge to a jehovah's witness, *Casares v. State*, 913 S.W. 2d 468 (1995) where a Texas court upheld the exclusion of two Black jurors who were members of the Pentecostal church and *State v. Fuller*, 356 N.J. Super.266, 812 A. 2d 389 (2002) in which merely dressing as a member of the Muslim Faith was viewed as suffcent reason for a peremptroy challenge. All of these decisons occured in the context of *Batson* related claims on appeal. The concept that says we have a right to knwo the "scruples" of any juror on an issue relevant ot the case comes from of course *Witherspoon v. Illinois*, 391 U.S. 510 (1968) and i's progeny.

**F. Publicity**

The publicity in this case portrays Dr. Ashqar as a part of a terrorist organization. Thus, the potential jurors must be carefully questioned about exposure to press and prejudicial assumptions that my influence their ability to judge Dr. Ashqar fairly.

Compared to the three other, highly sensitive areas specified in this motion as especially requiring counsel's participation ( terrorism, religion and race), knowledge from media exposure is a subject about which the Court is more able to elicit candid, but disqualifying, information from the venire members. Nevertheless, counsel is still in a better position to question the juror's about possible bias that may result from ideas and opinions that have been shaped by media coverage of this particular case.

As it is Dr. Ashqar's burden to clearly demonstrate that a venire member is unqualified, *see United States v. Jones*, 608 F.2d 1004 (4th Cir. 1979), *cert. denied,* 444 U.S. 1086 (1980) (challenger's burden to show bias), it would be unfair to impede his counsels' ability to probe the subtle, but dangerous effects of media exposure. Furthermore, judges are not immune from failure to adequately probe the venire on this topic. *See Silverthorne v. United States,* 400 F.2d 627 (9th Cir. 1968 )(voir dire inadequate because judge relied solely on juror's subjective evaluation of their abilities to function). Because juror's knowledge from publicity and discussion in the community may affect their ability to judge in sublet ways, counsel should be permitted to ask questions and follow up on them in order to probe these prejudicial beliefs.

*G. Cause Challenges*

While a judge is obviously capable of asking whether veniremen would "lay aside" any objectionable opinions or impressions and "render a verdict based upon admissible evidence

6

alone", or similar boilerplate and rhetorical questions, such standard fare is unlikely to be seen as adequate in a racially and religiously sensitive terrorism case. As a practical matter, how can a judge actually and thoroughly commit to using her considerable authority to "discover basis for intelligent exercise of cause and peremptory challenge . . . " *State v. Jones*, 596 So.2d 1360, 1366 (La.App. 1992). "We are convinced that prohibiting attorney-conducted voir dire altogether may seriously impede that objective." *Whitlock v. Salmon*, 752 P.2d 210, 212 (Nev. 1988).

### H. Peremptory Challenges

Peremptory challenges remain one of the most important rights of the accused. *See Swain v. Alabama*, 380 U.S. 202 (1965); *Pointer v. United States*, 151 U.S. 396, 408 (1984). While the number of peremptory challenges that the defense has may seem to make the need for questioning less, nonetheless, in view of the sensitive and complex issues in this case, counsel's participation in questioning of prospective jurors on certain limited topics is essential. *See Fed.R.Crim.Proc. 24(b)*. Such a ruling would permit counsel to make an individual judgment regarding peremptory challenges rather than a stereotypical assumption or a crude guess, thereby impairing the peremptory challenge right. *See United States v. Harris*, 542 F.2d 1283, 1294 (7th Cir.), *cert. denied*, 430 U.S. 934 (1976) ("the defendants must be permitted sufficient inquiry into the backgrounds and attitudes of prospective jurors to enable them to exercise intelligently their peremptory challenges"); *United States v. Ledee*, 549 F.2d 990, 993 (5th Cir.), *cert. denied*, 434 U.S. 902 (1977) ("peremptory challenges are worthless if trial counsel is not afforded an opportunity to gain the necessary information upon which to base such strikes.").

7

## I.  Social Science Evidence

When the judge conducts the voir dire, it usually consists of leading questions which cause prospective jurors to agree unquestioningly.  It is not uncommon to hear a judge ask a prospective juror, "You can be fair and impartial, can't you?" to which the obvious appropriate answer is, "Yes."  Few jurors ever dare to disagree.  Social science studies have repeatedly shown that jurors are acutely aware of even the most subtle cues or indications from the judge.  Fearing the court's disapproval, jurors will usually respond to the court's queries in a manner they believe is acceptable to the court without actually considering their own individual, personal and honest responses.  Note, *Judges' Non-Verbal Behavior in Jury Trials:  A Threat to Judicial Impartiality*, 61 Va. L. Rev. 1266 (1975); *see* Broeder, *Voir Dire Examinations:  An Empirical Study*, 38 S.Cal. L. Rev. 503, 506, 513 (1965).  The Supreme Court has noted:

> The influence of the trial judge on the jury "is necessarily and properly of great weight" and "his lightest word or intimation is received with deference, and may prove controlling."

*Oeurcia v. United States*, 289 U.S. 466, 470 (1933) (quoting *Starr v. United States*, 150 U.S. 614, 626 (1894)).

Attorney conducted voir dire is a more effective tool for eliciting bias than questioning conducted by the court alone.  The social distance between the questioner and the prospective jurors is reduced and jurors may feel less inhibited about offering more candid responses to an attorney.  Furthermore, the judge cannot have the same interest in discerning juror bias as does an adversary, and the adversaries may be more sensitive to those juror responses which may need follow-up inquiry.  Moreover, the trial judge is less familiar with the evidence and case

8

theories than are the parties. In *United States v. Ledee*, 549 F.2d 990, 993 (5th Cir. 1977), the

Court stated:

> A judge cannot have the same grasp of the facts, the complexities and nuances
> as the trial attorneys entrusted with the preparation of the case. The court does
> not know the strength and weakness of each litigant's case. Justice requires
> that each lawyer be given an opportunity to ferret out possible bias and
> prejudice of which the juror himself may be unaware until certain facts are
> revealed.

*See also* Frates & Green, *Jury Voir Dire: The Lawyer's Perspective*, 2 A.B.A. Litigation
(1976).

Social science research demonstrates that attorneys are more effective than judges in

eliciting candid self-disclosure from potential jurors. Attorney conducted voir dire minimizes

the pressure to conform to a set of perceived judicial standards that arises due to questions

from the judge. In one study, subjects changed their answers almost twice as much when

questioned by a judge as when interviewed by an attorney. Jones, *Judge-Versus Attorney-*

*Conducted Voir Dire*, 2 Law and Human Behavior 131 (1987).

### J. ABA Standards

After initially recommending that judges have the option of conducting voir dire

without permitting counsel to question jurors personally, the American Bar Association

reversed its position. It now recommends at least some personal participation in voir dire by

counsel in every case, not just death penalty cases. American Bar Association, *Standards for*

*Criminal Justice, Trial by Jury*, § 15-2.4 provides:

1. (a) Questioning of jurors should be conducted initially by the court, and should be
   sufficient, at a minimum, to determine the jurors' legal qualifications to serve.

   (b) Following initial questioning by the court, counsel for each side should have the
   opportunity, under the supervision of the court and subject to reasonable time limits, to
   question jurors directly, both individually and as a panel.

(c) Voir dire examination should be sufficient to disclose grounds for challenges for cause and to facilitate intelligent exercise of peremptory challenges.

.

Wherefore, for all of these reasons, Dr. Ashqar prays that his motion for attorney participation in voir dire be granted.

Respectfully Submitted,

/s/ William B. Moffitt                                /s/ Andrea D. Lyon
**WILLIAM B. MOFFITT**                            **ANDREA D. LYON**,
Moffitt & Brodnax, Ltd.                               25 E. Jackson Blvd.
The Mills Building, Suite 400                      Chicago, Illinois 60604
1700 Pennsylvania Avenue, NW                   (312) 362-8402
Washington, D.C.  20006

Attorneys for Defendant Ashqar